AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| Colby Smith | ) | |
| | ) | **3:25 mj 0529** |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____December 9, 2025_____ in the county of _____Montgomery_____ in the

___Southern___ District of _____Ohio_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC s. 1201 | kidnapping |
| 18 USC s. 2119 | carjacking |
| 18 USC s. 924(c) | use, carrying, and brandishing of a firearm during and in relation to a crime of violence – namely, carjacking |

This criminal complaint is based on these facts:

See Attached Affidavit of Frederick Zollers

☑ Continued on the attached sheet.

*Frederick Zollers*
_____
*Complainant's signature*

Frederick Zollers, TFO of the FBI
_____
*Printed name and title*

Sworn to by reliable electronic means -- namely, telephone.

Date: __12/11/25__

_____
*Judge's signature*

City and state: _____Dayton, Ohio_____

United States Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, Frederick D. Zollers, being duly sworn, does hereby depose and state as follows:

## INTRODUCTION

1. I am a sworn law enforcement officer in the State of Ohio and have been for over seventeen (17) years. I am presently a sworn member of the Montgomery County Sheriff's Office ("MCSO"). I am currently assigned to the Federal Bureau of Investigation ("FBI") Southern Ohio Safe Streets Task Force ("SOSSTF") as a Task Force Officer ("TFO"). I have received training in drug trafficking and firearms investigations and have participated in numerous investigations (ultimately leading to successful prosecutions) that involved surveillance, gathering evidence of money laundering, interviewing suspected drug and firearms traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics, firearms, and U.S. currency. I have conducted numerous investigations into the unlawful distribution and possession of controlled substances and use and possession of firearms.

## PURPOSE OF AFFIDAVIT

2. I submit this Affidavit in support of a criminal complaint and issuance of an arrest warrant against Colby Smith ("**SMITH**") for violation of 18 U.S.C. § 1201 (kidnapping), 18 U.S.C. § 2119 (carjacking) and 18 U.S.C. § 924(c) (use, carrying, and brandishing of a firearm during and in relation to a crime of violence – namely, carjacking).

3. Along with other law enforcement agents, I have participated in the investigation of **SMITH** in connection with the conduct detailed in this Affidavit. As part of the investigation, I have, among other things, discussed information with, and/or reviewed documentation and reports provided by, other law enforcement officers. My knowledge of the facts and circumstances set forth in this Affidavit is thus based upon my own personal observations, as well as information I have received from other officers involved in the investigation. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have indirect knowledge.

4. This Affidavit does not include all the factual details of this investigation, but rather only certain information sufficient to establish probable cause to believe that **SMITH** has committed a violation of Title

## SUMMARY OF PROBABLE CAUSE

5. On Tuesday, December 9, 2025, at approximately 9:00 a.m., Montgomery County Sheriff's Office (MCSO) Deputies were dispatched to 1845 Union Airpark Boulevard, Union, Ohio regarding an aggravated robbery complaint. The dispatch remarks advised the victim was kidnapped and robbed of their vehicle at the Speedway gas station located at 3901 N. Dixie Drive in Harrison Township, Montgomery County, Ohio. Deputy Jackson responded and spoke with the victim (hereinafter identified as DP). DP reported that a man (later identified as SMITH) used a firearm to rob DP of his car at gunpoint. According to DP, while driving to his place of employment, he stopped at the Speedway gas station located at 3901 N. Dixie Drive to put air in his vehicles tire. DP said his vehicle was a 2010 blue in color Chevrolet Cobalt with an Ohio registration ending in 500. (Later record searches revealed the Cobalt also had a Vehicle Identification Number or VIN of 1G1AD5F56A7225808). DP stated that, while he was kneeling to put air in the tire, he heard someone say something and felt something pressed against his

1

shoulder blade. Because DP was wearing air pods and did not clearly hear what was said to him, he turned around to see pointing at him a silver gun with damage or wear on the barrel. DP said the male suspect holding the gun was wearing a ski mask. DP described the male suspect to be in his mid-thirties, approximately 5'10" to 6'1". DP said the male suspect was wearing a blue and white hoodie, bleached jeans, and gloves.

6. While holding the gun on DP, the male suspect stated he needed the vehicle (i.e., the Cobalt). DP placed the keys to his vehicle on the hood of his car. Yet, the male suspect ordered DP at gunpoint to enter the front passenger seat of the Cobalt. DP complied with the male suspect's demands. The male suspect entered the driver seat of the car and instructed DP to turn off his cellphone and place it in the car's cupholder. DP again followed these demands. Against DP's will, the suspect drove DP and the vehicle away from the gas station. Notably, surveillance video from the Speedway confirmed DP's statements.

7. According to DP, as they drove from the gas station, the masked gunman told DP not to do anything stupid or he would be killed. As the male suspect continued to hold DP in the car, DP attempted to reason with the male suspect and request his (DP's) release. Sometime later, the male suspect stopped the car and ordered DP from DP's Cobalt. DP exited the car, and the male suspect drove away in the Cobalt. After unsuccessfully attempting to obtain help at a nearby business, DP walked to his employer where he called 911. Notably, the male suspect still had DP's cellular telephone in the now-stolen Cobalt. Investigators broadcasted information regarding the aggravated robbery and kidnapping offense and description of the Chevrolet Cobalt to surrounding law enforcement jurisdictions.

8. Based on my training and experience, I know that automobiles, including cars such as a Chevy Cobalt, are instrumentalities of interstate commerce. I also know that the suspect held DP at gunpoint and threatened to kill DP to gain access to and control over DP's vehicle.

9. While MCSO were investigating the kidnapping of DP and the robbery of his car, officers with the Dayton Police Department (DPD) responded to a second incident at 1234 S. Broadway Street in Dayton, Ohio involving the same male suspect as the Cobalt robbery described above. DPD officers Perdue and Wasserman met the victim (hereinafter identified as NF), at Dayton Fire Department (DFD) Station 10 located at 1234 South Broadway Street in Dayton, Ohio. According to NF, he was a City of Dayton Employee who was working leaf collection for the day near the 2900 block of Home Avenue. NF parked his City of Dayton maintenance truck, a grey 2021 Chevy Colorado with OH License plate 455YHS (VIN Number 1GCHTCEN3M1290105) and waited for the rest of his work crew to arrive.

10. Shortly thereafter, a male suspect (later identified as **SMITH**) entered the passenger side of the truck and pointed a gun at him. The male suspect instructed NF to drive. NF stated the male suspect was armed with a black revolver, and it appeared there was ammunition loaded in its cylinder. The male suspect asked if NF had an ATM card and ordered NF to open his bank accounts on his cell phone. NF did not have his ATM card with him but did show the male suspect the Fifth Third Bank app on NF's phone. The male suspect ordered NF to drive to a nearby Fifth Third Bank, and NF complied. Once at Fifth Third Bank, the male suspect ordered NF to use his bank app and combine all NF's money into one account and withdraw the funds from the outdoor ATM.

11. NF went to the ATM and attempted to withdraw all the money from his account using the Fifth

2

Third Bank Mobile app; however, limits on ATM withdrawals only permitted him to take $400 from his account. Unhappy with the ATM withdrawal, the male suspect ordered NF to park at the bank and wait for its drive thru to open to withdrawal additional funds. When the drive through opened at 9:00 a.m., the male ordered NF to withdraw an additional $1,000 from the outdoor teller. NF complied with the male suspect's demands. NF noted that Fifth Third provided the withdrawn funds in $50 bills.

12. The suspect then directed NF to drive back to the area where this kidnapping and carjacking first occurred. While driving back, the male suspect ordered NF to stop the truck and ordered NF from the vehicle. The male suspect ordered NF to leave his wallet and cellphone, which NF did. The male suspect drove away in the truck. NF proceeded to a nearby fire station, where he called police. NF described the male suspect as a black male, middle aged, average height and weight, wearing all black with white paint on his pants, and a black mask. NF said in addition to the $1,400.00 he withdrew from Fifth Third Bank he also had approximately four $20.00 dollar bills and several $1.00 dollar bills that were in the wallet he left in the truck.

13. DPD went to the Fifth Third Bank and that financial institution confirmed that, at 8:43 a.m., $400.00 was withdrawn from NF's account. At 9:05 a.m. a second transaction for $1,000.00 was conducted at the drive thru teller line from NF's account. DPD secured surveillance footage from the incident at Fifth Third Bank. That footage corroborated NF's statements. For instance, it captured NF seated in his work truck with a front passenger who was wearing blue latex gloves.

14. DPD investigators later located NF's stolen truck unoccupied at the intersection of Groveland Avenue and Grandview Avenue in Dayton, Ohio. The vehicle was towed for processing.

15. Based on my training and experience, I know that trucks, including the Chevy Colorado, are instrumentalities of interstate commerce. Additionally, I have reviewed the VIN number for the Chevy Colorado and confirmed that it was manufactured in Wentzville, Missouri. Accordingly, I know that the Chevy Colorado take from NF moved in interstate commerce and crossed a state line to reach Ohio.

16. While DPD investigated the incident involving NF and the taking of the City of Dayton truck, law enforcement located DP's stolen Cobalt on Flock camera traveling west on Third Street from Gettysburg Avenue. Investigators responded to the area and located the Chevrolet Cobalt parked at a tire shop located at 4220 W. Third Street. Law enforcement activated the emergency lights on one of their vehicles and approached the Cobalt. **SMITH** exited the driver seat of the Chevrolet Cobalt and fled west on foot through the parking lot. MCSO pursued **SMITH** on foot and watched as **SMITH** tossed an item while running. **SMITH** continued to flee on foot through the parking lot of the West Town Shopping Center on W. Third Street until he was taken into custody behind the shopping center. MCSO retraced SMITH's path of flight and recovered the item that he tossed – namely, the ignition key to the Chevrolet Colorado taken from NF earlier that morning.

17. When **SMITH** was arrested, he was wearing dark colored pants with what appeared to be white paint stains on them. On top, **SMITH** was wearing multiple layers, including a black jacket over a light colored, grey zip up hoodie; underneath the hoodie, **SMITH** had on a blue sweatshirt or t-shirt. **SMITH** also was wearing a black ski mask and blue latex gloves. **SMITH**'s clothing matched the descriptions that DP and NF provided of their respective assailants. A search of **SMITH's** person incident to arrest revealed hidden on him $1,443.00 U.S. currency. This money

3

included 27 fifty dollars bills totaling $1,350.00 – consistent with the funds NF was forced to withdrawal from Fifth Third earlier that morning. Additionally, investigators spoke with an employee of the tire shop where MCSO discovered the Cobalt. The employee advised that, prior to **SMITH** fleeing from police, **SMITH** threw items in a trash can. MCSO went to the trash can and recovered from it a blue latex glove and a Fifth Third bank envelope dated December 9, 2025.

18. MCSO investigator's contacted DP after his Chevrolet Cobalt was located, and he consented to a search of it. Investigators located a backpack in the passenger area of the Chevrolet Cobalt. The backpack was found to contain a Rexio Fabrica De Armas .38 caliber revolver. The revolver was loaded with two .38 caliber rounds and one spent casing. The revolver was black in color. However, the revolver did have signs of wear to the frame resulting in a silver color being visible on the frame and barrel, which was consistent DP's description of his assailant's firearm. Additionally, law enforcement found two cellular telephones in the Cobalt – include the device that belonged to DP.

19. Investigators took **SMITH** to an interview room at a law enforcement facility. While in the room, **SMITH** attempted to disable the rooms recording system. He then tore up latex gloves that he had with him and attempted to hide them in the ceiling tiles of the interview room.

20. The Rexio Fabrica De Armas .38 caliber revolver was sent to the Miami Valley Regional Crime Laboratory for operability testing. On December 10, 2025, the Affiant contacted the lab which confirmed that the revolver was determined to be operable.

21. A review of criminal history for **SMITH** revealed the following convictions: Aggravated Robbery (O.R.C. 2911.01) (2011); Burglary (O.R.C. 2911.12) (2013); Robbery in the Second Degree: Motor Vehicle (N.Y. P.L. 160.10) (2019); Theft (O.R.C. 2913.02) (2022); Obstructing Official Business (O.R.C. 2921.31) (2022); and Obstructing Official Business (O.R.C. 2921.31) (2023)

22. Based on the facts set forth in this Affidavit, there is probable cause to believe that, on or about December 9, 2025, in the Southern District of Ohio, **SMITH** committed 18 U.S.C. § 1201 (kidnapping), 18 U.S.C. § 2119 (carjacking) and 18 U.S.C. § 924(c) (use, carrying, and brandishing of a firearm during and in relation to a crime of violence – namely, carjacking).

Further your Affiant sayeth naught.

*Frederick Zollers*

_____Frederick D. Zollers_____
Frederick D. Zollers, Task Force Officer
Federal Bureau of Investigation
Southern Ohio Safe Streets Task Force

Subscribed and sworn to before me this _____ December 2025.

_____
UNITED STATES MAGISTRATE